UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAILROAD BUSINESS PARK, LLC,

Plaintiff,

v.

TRAVELERS CASUALTY
INSURANCE COMPANY OF
AMERICA.

Defendant.

No.  2:20-cv-02189-MCE-DJP

**ORDER**

Plaintiff Railroad Business Park, LLC, ("Plaintiff") initiated this action against Defendant Travelers Casualty Insurance Company of America ("Defendant") claiming that Defendant wrongfully failed to pay out the proceeds of an insurance policy after Plaintiff sustained significant damage to a covered commercial building.  Presently before the Court is Defendant's Motion for Summary Judgment.[1]  ECF No. 50.  For the following reasons, that Motion is GRANTED.

///

///

///

---

[1]  Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

2

**BACKGROUND**[2]

3

In March 2019, Plaintiff purchased a commercial building at 1200 F Street in

4

Modesto, California, for $450,000, and insured it through Defendant.  Later that year, on

5

December 6, 2019, the building sustained interior water damage from a roof leak.

6

Plaintiff initiated a claim with Defendant that same day.

7

According to Defendant's records, the initial report indicated that the ceiling had

8

collapsed in two or more rooms and that Plaintiff was having someone come out with

9

fans to dry the property.  Ajay Mangal, one of Defendant's adjusters, was assigned the

10

case and contacted Brian Osborn, Plaintiff's owner, that same day.

11

Osborn advised Mangal during the initial phone call that water seeped through the

12

roof causing damage to several ceiling tiles in multiple rooms.  Mangal immediately

13

traveled to the property, arriving within approximately one hour of receiving the initial

14

notice of the claim.  Upon his arrival, Mangal observed that Osborn had hired one Daniel

15

Gutierrez to begin to temporarily patch the roof.[3]  Mangal advised Osborn that for

16

coverage to exist, an opening in the roof must be present to allow for water damage.

17

Osborn responded by advising Mangal that wind had caused damage to the roof, which

18

allowed water to penetrate the interior of the building.

19

After his inspection and after speaking with the roof repair person, Mangal made a

20

determination to extend coverage.  He thus wrote an estimate to include three squares

21

of roofing, drying out the carpet, and replacing 42 ceiling tiles.

22

///

23

///

24

---

[2] The following recitation of facts is taken, at times verbatim, from Defendant's Reply to its Separate Statement of Undisputed Material Facts, ECF No. 53-2, and Defendant's Response to Plaintiff's Disputed Facts, ECF No. 53-1.

25

26

[3] The parties quibble about us of the term "repair" since Plaintiff contends Gutierrez's work was intended to be temporary.  It does not matter for purposes of the instant motion whether the repairs were temporary or permanent.  It is enough that the parties agree that Gutierrez was working on closing up the holes when Mangal arrived on site.

27

28

1    Mangal then issued an electronic payment to Osborn in the amount of the estimate,

2    which was written for Replacement Cost Value, less the $1,000 deductible, for a total

3    payment in the amount of $3,909.64.

4          A few days later, on December 9, Travelers received notification that Osborn had

5    retained the services of Public Adjuster David DeTinne, purportedly a business associate

6    of Osborn, who requested a reinspection of the property.  The following day, Mangal and

7    another of Defendant's representative's, Charles Eckstrom, joined Osborn and DeTinne

8    at the property for that purpose.  At that point, Osborn advised that he was a contractor

9    and had previously worked for a mitigation company.  During this reinspection, DeTinne

10   identified areas that he felt had not been properly addressed during the initial inspection,

11   such as subfloor damage and the need for replacement carpet throughout the building.

12   Travelers agreed that a restoration company could be retained to determine what areas

13   required dry out and determined ServiceMaster of Merced ("ServiceMaster") would be

14   utilized.  The next day, ServiceMaster inspected the site and thereafter prepared an

15   estimate for dry out in the amount of $3,917.63.

16         On December 20, 2019, Defendant issued a Reservation of Rights letter to

17   DeTinne.  Subsequently, on February 3, 2020, DeTinne advised Defendant that his

18   damage estimate for this loss now totaled at least $400,000.  Then, on June 28, 2020,

19   Plaintiff submitted a partial proof of loss to Defendant in the amount of $690,704.94.

20         Eventually, on April 28, 2021, Plaintiff authorized Defendant to conduct an

21   inspection of the premises.  Defendant retained Jay Carey of AXIS Construction

22   Consulting (hereafter "Carey" or "AXIS") to perform a repair estimate and to provide

23   opinions as to causation.  AXIS Expert Report, ECF No. 50-19.  As a result of his

24   investigation, AXIS provided a detailed analysis supporting the conclusion that at no time

25   did the roof sustain damage as a result of wind; instead, any water that entered the

26   building was due solely to the deterioration of the roof.  Id.  These conclusions were

27   based on AXIS's inspection of the interior and exterior of the property and specific

28   evidence proffered to show that the roof was at the end of its useful life.  Id.

Carey confirmed all of the information provided in the report in extensive testimony at his deposition.  <u>See</u> Carey Depo., ECF No. 50-29.

On the other hand, Plaintiff proffered a rebuttal expert report of construction expert Robert Bresee stating instead that, "the most important cause of the damage at the property . . . was wind activity over a number of days prior to and including December 7, 2019."  Bresee Rebuttal Report, ECF No. 52-3, Ex. 19.  Bresee did not explain the basis for his opinion.  Nor did his sworn deposition testimony elucidate how he reached this conclusion.

Plaintiff also provided another report, prepared by its meteorology expert, Jay Roenthal, as evidence of causation.  Expert Report Jay Rosenthal, ECF No. 52-3, Ex. 18 at 1, 6-14.  Rosenthal opined in the report that "it was much more likely than not that the strong and damaging wind gusts just prior to the rain events, as well as the winds that accompanied some of the successive rain events from November 25 through December 7, 2019, were instrumental in causing water intrusion that damaged the premises of the Railroad Business Park."  <u>Id.</u> at 5.  He also made clear, however, that he is not a construction expert, that he never visited the building, and he did no analysis of the condition of the roof before or after the incident.  Rosenthal Depo., ECF No. 53-5, Ex. Z.

After Defendant declined further coverage for Plaintiff's claim, Plaintiff initiated this action for breach of the implied covenant of good faith and fair dealing.  Defendant's motion followed.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

///

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. <u>Celotex</u>, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. <u>See</u> Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); <u>see</u> <u>also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 56(a); <u>State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

///

///

///

5

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

///

///

6

1

**ANALYSIS**

2

3      Defendant moves for summary judgment as to Plaintiff's breach of the implied

4   covenant of good faith and fair dealing claim arguing that:  (1) Plaintiff cannot show that

5   water damage to the building was caused by an event covered under the policy; and

6   (2) any bad faith claim is foreclosed because Defendant acted reasonably in handling

7   and denying Plaintiff's claim.  Because the Court agrees that Plaintiff has not shown its

8   losses were covered under the policy, Defendant's Motion is GRANTED.  Defendant's

9   remaining arguments need not be addressed.[4]

10      "In order to establish a breach of the implied covenant of good faith and fair

11   dealing under California law, a plaintiff must show: (1) benefits due under the policy were

12   withheld; and (2) the reason for withholding benefits was unreasonable or without proper

13   cause."  Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001).  If benefits were

14   not due under the policy, the inquiry ends.

15      In this case, the applicable policy provides:

16          A.      COVERAGE

17          We will pay for direct physical loss of or damage to Covered
            property at the premises described in the Declarations caused
18          by or resulting from a Covered Cause of Loss.

19          . . . .

20          4.      Covered Causes of Loss

21          RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

22              a. Limited in Paragraph A.5., Limitations; or

23              b. Excluded in Paragraph B., Exclusions.

24   ///

25   ///

26 ───────────────
        [4] For the same reasons, namely that the Court does not reach the issues raised by evidence
27   submitted in Plaintiff's Supplemental Declaration (ECF No. 56), Defendant's Motion to Strike that filing (EF
     No. 57) is DENIED as moot.  Nor was evidence submitted with Defendant's Reply improper, and Plaintiff's
     objections (ECF No. 54) are thus OVERRULED.
28

1       5. Limitations

2           a. We will not pay for loss of or damage to:

3                (1) The "interior of any building or structure" or to
               personal property in the building or structure,
4                caused by rain, snow, sleet, ice, sand or dust,
               whether driven by wind or not, unless:

5

6                (a) The building or structure first sustains
               damage by a Covered Cause of Loss to its roof
7                or walls through which the rain, snow, sleet, ice,
               sand or dust enters.

8 Decl. of James B. Glennon, ECF No. 50-21, Ex. R, at 13-16 of 132.  Under the policy

9 language, then, the building must have sustained some damage that permitted the rain

10 to enter the premises before coverage can be established.

11       In this case, Plaintiff contends that wind from a storm damaged the roof.  The first

12 problem with Plaintiff's argument, however, is that, as set forth above, Defendant has

13 offered the extensive sworn testimony of an expert witness, Jay Carey of AXIS, who

14 opines that the roof's failure was caused by deterioration over time instead of by wind.

15 The second problem is that Plaintiff has offered no admissible expert testimony to the

16 contrary.[5]

17       Plaintiff did disclose a purported construction expert who stated in a rebuttal

18 report that "the most important cause of the damage at the property . . . was wind activity

19 over a number of days prior to and including December 7, 2019."  Pl.'s Ex. 19, ECF No.

20 52-3.  This opinion is inadmissible, however, because Bresee provided no sworn

21 statement whatsoever—not in a declaration, a deposition, or otherwise—permitting the

22 Court to conclude that:  "(b) [his] testimony is based on sufficient facts or data; (c) [his]

23 testimony is the product of reliable principles and methods; and (d) the expert's opinion

24 reflects a reliable application of the principles and methods to the facts of the case."  See

25 Fed. R. Evidence 702.

26

27       [5] Plaintiff's argument as to which party bears which burden to show coverage or some sort of
limitation is of no help to it because Defendant has proffered the only admissible evidence going to
28 causation.  Since Plaintiff did not offer any admissible expert evidence to the contrary, Plaintiff cannot
succeed on its claim regardless of which party bears the initial burden of proof.

Bresee never explains how he reached that conclusion, that his methodology was sound or that his opinion was reliably formed based on the facts of this case.  Indeed, Bresee never identified under oath any particular portion of the roof that had been damaged by wind.  To the contrary, in his deposition, Bresee identified several areas of damage or repair that he explicitly disclaimed as not having resulted from wind damage.  Bresee Depo., ECF No. 53-6, at 71:3-7; 72:8-14; 73:9; 128:5-6.  Nor did Bresee explain at any time how he would have reached a wind causation opinion in any event.  At base, the only expert opinion that Plaintiff offers from Bresee is an unsworn, unsupported, and conclusory statement in a rebuttal report by which Bresee states that wind activity was "the most important cause of the damage to the property."  Accordingly, Plaintiff has offered insufficient evidence that would allow Bresee to offer expert testimony as to whether wind caused the damage to the roof in this instance and that evidence will be disregarded.

Plaintiff next contends that his meteorological expert proffered an opinion that "it was much more likely than not that the strong and damaging wind gusts just prior to the rain events, as well as the winds that accompanied some of the successive rain events from November 25 through December 7, 2019, were instrumental in causing water intrusion that damaged the premises of the Railroad Business Park."  Rosenthal Report at 5.  However, Mr. Rosenthal was not disclosed or qualified as a construction expert.  Rosenthal Depo., ECF No. 53-5, Ex. Z, at 92.  He never visited the building, and he did no analysis of the condition of the roof before or after the incident.  In fact, he admitted that anything to do with the condition of the structure was beyond his purview.  Rosenthal's testimony is thus insufficient to create a genuine issue of triable fact with regard to causation.

Finally, Plaintiff offers statements by Osborn and Gutierrez for the proposition that they believed wind caused damage to the roof allowing water to enter the building.

///

///

1   Causation in this case where there are no witnesses is beyond the scope of lay witness

2   testimony.  Neither of these individuals were designated as experts on causation and

3   neither provided any evidence indicating that they would qualify to be so considered in

4   any event.  Accordingly, their testimony is inadmissible as well.

5        The only admissible evidence in the record is the expert testimony of Jay Carey

6   standing for the proposition that the damage to the roof was the result of deterioration

7   over time and was not cause by a wind event.  Given that, there can be no coverage

8   under the policy.  Since Defendant's decision to decline coverage was proper, Plaintiff's

9   breach of the implied covenant of good faith and fair dealing claim fails, and Defendant

10  is entitled to judgment as a matter of law.

11

12                                **CONCLUSION**

13

14       Defendant's Motion for Summary Judgment (ECF No. 50) is GRANTED, and its

15  Motion to Strike (ECF No. 57) is DENIED.  The Clerk of the Court is directed to enter

16  judgment in Defendant's favor and close this case.

17       IT IS SO ORDERED.

18  Dated:  August 2, 2024

19                                     _____

20                                     MORRISON C. ENGLAND, JR.
                                       SENIOR UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                          10